UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:
```

JOSEPH CANNON,

                              Plaintiff,

                    v.

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY; P.O. A. VIGNAPIANO;
DETECTIVE LYNCH; SGT. KOSTANOSKI,

                              Defendants.

15-CV-4579 (RA)

OPINION & ORDER

Ronnie Abrams, United States District Judge:

Plaintiff Joseph Cannon, Jr. brings this action against Defendants Police Officer Andrew Vignapiano, Detective Eric Lynch, Sergeant Keith Kostanoski, and the Port Authority of New York and New Jersey, alleging false arrest and imprisonment and unlawful search and seizure pursuant to 42 U.S.C. § 1983.[1] Defendants have made a motion for summary judgment and Plaintiff, acting *pro se*, has made a similar motion, which the court construes as a cross motion for summary judgment. The Court previously stayed this action in order to consider whether, pursuant to Federal Rule of Civil Procedure 17(c), a guardian ad litem should be appointed for Plaintiff, who has a long history of mental illness. For the reasons that follow, the Court finds that a guardian ad litem

---

[1] Plaintiff included in his Amended Complaint claims for malicious prosecution and violation of the right to counsel, but the Court dismissed these claims *sua sponte* for failure to state a claim upon which relief can be granted. Dkt. 10. Thereafter, Plaintiff filed a document, titled "Amended Pleading Complaint for Damages," raising additional claims for failure to timely disclose Brady material, encouraging perjured testimony to be produced at trial, and engaging in "abuse of process," negligence, and gross negligence. Dkt 30. Because this "Amended Pleading Complaint for Damages" was filed without leave of court, the Court will not consider these allegations. Even if the Court were to consider these new allegations, however, it would dismiss them for lack of factual support. *See Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) (affirming *sua sponte* dismissal of complaint devoid of factual allegations to support a claim).

need not be appointed for Plaintiff, grants Defendants' motion for summary judgment in part and denies it in part, and denies Plaintiff's motion for summary judgment in its entirety.

## BACKGROUND[2]

Plaintiff boarded a New York-bound PATH train around 4:00 a.m. on March 20, 2015. During his trip, Plaintiff began to follow the train conductor who was making his way through the car, eventually stopping in the area where the conductor had to stand to open the train's doors. The conductor asked Plaintiff to move, which he did, but as the conductor inserted his key into a switch on the wall of the train to open the doors, Plaintiff suddenly reached across him for an item—either the keys or the train radio transmitter—in the conductor's possession. The conductor attempted to prevent Plaintiff from grabbing this item and the two physically struggled. When the conductor tried to call the police on his radio, Plaintiff seized the radio. The conductor then pushed Plaintiff into an empty seat, standing over Plaintiff as Plaintiff temporarily ceased struggling, and instructed passengers to walk into the second car. As passengers began to move, Plaintiff began to wrestle with the conductor again, at which point the conductor grabbed Plaintiff's shirt and Plaintiff pulled out of it, leaving him shirtless. The conductor then moved to the middle of the train to open one door for the remaining passengers to exit, and Plaintiff—still in possession of the conductor's radio—attempted to leave the car with the other passengers, until the conductor blocked him. A brief physical confrontation ensued, but Plaintiff soon stopped struggling and began to speak with the conductor, finally returning the radio to him. Once the conductor walked to a different part of the train, Plaintiff hesitated in the middle doorway, looked both ways, and ran off.

---

[2] Plaintiff has not submitted a counterstatement of disputed facts in response to Defendants' Rule 56.1 statement. In light of Plaintiff's pro se status, however, the Court considers other documents submitted by Plaintiff, including his deposition transcript, in lieu of a 56.1 statement. *See infra* at 6–7. The following facts are not genuinely disputed unless otherwise noted. Among other things, video surveillance from the PATH train shows the entirety of the events taking place on the train.

Port Authority Police Officer Vignapiano received a radio transmission of the physical altercation and of Plaintiff's description. Officers Vignapiano and Borneo then observed Plaintiff near 14th Street and Union Square, and Sergeant Kostanoski arrived on the scene. Upon seeing the police vehicles, Plaintiff ran away, and the officers pursued him. Once they reached him, he initially knelt to the ground, but then jumped up and ran away. Sergeant Kostanoski and Officer Vignapiano caught up with Plaintiff, wrestled him to the ground, and handcuffed him. Plaintiff was arrested and charged with robbery, attempted robbery, assault, and resisting arrest. After he was brought to the Port Authority Bus Terminal police command, Plaintiff alleges he was handcuffed to a wall and strip searched by Officer Vignapiano. Officer Vignapiano denies that a strip search was conducted.

After the parties filed their cross motions for summary judgment, this Court stayed the proceedings to consider whether a guardian ad litem should be appointed for Plaintiff due to his long history of mental illness.

## DISCUSSION

### I.      Guardian ad litem

"[T]he duty to appoint a guardian ad litem or 'make such order as [the court] deems proper,' Fed. R. Civ. P. 17(c)(2), is triggered by 'actual documentation or testimony' of mental incompetency." *Perri v. City of New York*, 350 F. App'x 489, 491 (2d Cir. 2009) (quoting *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 n.4 (2d Cir. 2003). Such documentation may consist of a judgment from a "court of record," *Ferrelli*, 323 F.3d at 201 n.4, or "verifiable evidence from a mental health professional demonstrating that [the party is] being treated for mental illness of the type that would render [him] legally incompetent." *Hockenjos v. City of New York*, No. 13-CV-27 (WFK), 2014 WL 3519186, at *4 (E.D.N.Y. July 15, 2014). *Cf. Perri*, 350 F.

App'x, at 491 (district court had failed to consider "an evaluation by a mental health professional employed by a public agency that detail[ed] plaintiff's long history of mental illness, indicate[d] that such illness causes him to have difficulty functioning, and recommend[ed] that he be represented by a guardian ad litem").

The evidence indicating that Plaintiff has been judged incompetent at any time is a Massachusetts criminal docket sheet, which states that Plaintiff was found not competent to stand trial in his domestic violence case on May 7, 2014. Dkt. 102, Ex. A at 4. The docket sheet, however, also indicates that Plaintiff's medical records were destroyed on June 18, 2015, so the Court is unable to review the competency evaluation that led to this finding. Dkt. 102 at 1. More recently, a psychiatric exam of Plaintiff was ordered on December 6, 2016 for his state criminal case in New York, *see New York v. Cannon*, 01885-2015 (N.Y. Supp. Ct. filed May 22, 2015), and he was found fit to stand trial in a report dated March 28, 2017. Two physicians—a psychiatrist and an osteopath—compiled the report, and both concluded that Plaintiff "does not as a result of mental disease or defect lack capacity to understand the proceedings against him[] or to assist in his[] defense."[3] The authors of the report based their findings not only on an in-person examination of Plaintiff on February 4, 2017, but also on two psychiatric examinations of Plaintiff in April 2015, medical records from NYC Health and Hospitals, the December 2016 order for an examination by the judge presiding in Plaintiff's criminal case in state court, and the grand jury indictment from May 2015. The examiners agreed that Plaintiff's history of erratic behavior did not rise to the level of incompetency to stand trial at that time. Specifically, the first examiner stated: "While [Mr. Cannon] has an extensive psychiatric history and reports a persecutory belief system, he did not

---

[3] The report is on file with the Court and, for reasons of confidentiality, it has not been uploaded to ECF.

exhibit signs and symptoms of active delusions or other forms of psychosis that would interfere with his ability to participate in his defense or understand the legal proceedings against him." The second examiner similarly noted that Plaintiff does have a history of violent behavior, psychotic symptoms, and drug use, but these were "not active issues at the time of his evaluation."

The Court is persuaded that as of March 28, 2017—the date this report was completed— Plaintiff was fit to stand trial. Although Plaintiff had been deemed incompetent in connection with his domestic violence proceeding in Massachusetts in 2014, no record of a competency evaluation exists for that case, and the Court finds it appropriate to rely instead on the more recent, verifiable psychiatric report deeming him competent as of March 2017. The only remaining question is thus whether, since the issuance of this competency evaluation, there has been "actual documentation or testimony" of Plaintiff's mental incompetency. *Ferrelli*, 323 F.3d at 201 n.4.

A review of the record before this Court does not reveal any such evidence. There are various notations in Plaintiff's medical records referencing borderline personality disorder, a mood disorder, and bipolar disorder, but these notes were all made before or within weeks of the March 2017 psychiatric evaluation which found him competent. Dkt. 83 at 5, 8. Furthermore, on April 17, 2017, a medical note in Plaintiff's record reads: "Not on medication, reports good appetite and good sleep. Maintaining contact with family, may get a visit next week. Patient denies intent to harm self or others, denies a/v hallucinations." *Id.* at 15. It should be noted that Plaintiff has submitted hundreds of pages of letters to the Court since March 2017, many of which contain unusual and graphic content. But given that "a litigant's bizarre behavior is insufficient to trigger a mandatory inquiry into his or her competency," *Ferrelli*, 323 F.3d at 202, such behavior is insufficient to trigger a *finding* of incompetency. In light of this evidence, appointment of a guardian ad litem does not appear to be necessary for Plaintiff to secure his rights in this case.

## II.      Cross-Motions for Summary Judgment

### A.      Legal Standard

The parties have moved for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is only appropriate where, considering "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016). The movant bears the burden of demonstrating the absence of a question of material fact." *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When a plaintiff proceeds pro se, the court must construe his submissions liberally and interpret them 'to raise the strongest arguments that they suggest.'" *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Pursuant to Local Rule 56.1(c), each factual statement set forth in the moving party's Rule 56.1 statement "will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local R. 56.1(c). "[W]here a pro se plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion," however, "the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)). Moreover, because the Court

"may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file" a Rule 56.1 statement, *Holtz*, 258 F.3d at 73 (citation omitted), it may examine deposition transcripts to determine if facts are disputed. *See Jackson v. NYS Dep't of Labor*, No. 09-CV-6608 (KBF), 2013 WL 449894, at *1 n.2 (S.D.N.Y. Feb. 6, 2013).

### B.      False Arrest

Plaintiff appears to bring federal and state law claims for false arrest and false imprisonment. A section 1983 claim for false arrest is "substantially the same" as a claim for false arrest under state law. *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Furthermore, under New York law, the torts of false arrest and false imprisonment are "synonymous." *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991). For both types of claims, the Second Circuit has adopted "the common-law rule . . . that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested." *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986). The Court of Appeals has explained that "[w]here the civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest." *Id.* at 388.

Here, the docket sheet for Plaintiff's New York criminal case indicates that Plaintiff was convicted of resisting arrest, which is one of the crimes for which he was arrested.[4] *See* Certificate of Disposition, Dkt. 124; Defs. Letter, Dkt. 122. Because Plaintiff was convicted of one of the crimes for which he was arrested, Defendants are entitled to summary judgment on Plaintiff's claim of false arrest.

---

[4] Plaintiff has represented that he was acquitted of second degree robbery and second degree assault in November 2018.

C.     **Unlawful Strip Search**

Plaintiff does not appear to contest the legality of Officer Vignapiano's pat-down search of him at the Port Authority Bus Terminal. Rather, in his Amended Complaint he alleges that "after he was arrested [he] was stripped immediately when brought into the precinct while handcuffed to the wall" and that he was "stripped naked and searched." Am. Compl. at 1–2. Plaintiff appears to bring this claim against all Defendants, who deny that Plaintiff was strip searched.

The Second Circuit "has exhibited considerable regard for the right of any person—even a person who has been lawfully arrested and confined in a correctional facility pending trial—not to be subjected to a strip search unless there exists particularized suspicion that an individual is secreting contraband." *Bolden v. Vill. of Monticello*, 344 F. Supp. 2d 407, 417 (S.D.N.Y. 2004) (citing *N.G. v. Connecticut*, 382 F.3d 225, 239 (2d Cir. 2004)); *see Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986). Under *Hartline v. Gallo*, 546 F.3d 95 (2d Cir. 2008), "[t]he Fourth Amendment requires an individualized 'reasonable suspicion that a misdemeanor arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest' before she may be lawfully subjected to a strip search." *Id.* at 100 (quoting *Weber*, 804 F.2d at 802) (alterations adopted). "[A]lthough the Supreme Court has found constitutional blanket policies mandating strip searches of detainees who enter the general population of a jail, *see Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 339 (2012), suspicionless visual body cavity searches at a police station 'are still subject to the *Hartline* standard requiring individualized reasonable suspicion.'" *Blue v. City of New York, et al.*, No. 14-CV-7836 (VSB), 2018 WL 1136613, at *15 (S.D.N.Y. Mar. 1, 2018) (citations omitted). While *Hartline* concerned arrests for misdemeanor offenses, "[t]his court agrees with other courts in the circuit which have concluded that the same standard applies to felony arrestees." *Jackson v.*

*Waterbury Police Dep't*, No. 3:11-CV-642, 2015 WL 5251533, at *9 (D. Conn. Sept. 8, 2015)

(citing *Sarnicola v. Cnty. of Westchester,* 229 F.Supp.2d 259, 270 (S.D.N.Y.2002)).

Plaintiff's deposition testimony creates several genuine disputes of material fact with respect to his strip search claim, namely whether the search occurred, whether Defendants were personally involved in it, and whether the search was based on reasonable suspicion. First, Plaintiff's deposition testimony is sufficiently specific and consistent to create a genuine dispute as to whether the strip search occurred. In his sworn testimony, Plaintiff alleges that once he was brought to the Port Authority precinct, he was handcuffed to a wall and Officer Vignapiano took his pants, socks, and boxers, as Plaintiff protested that a strip search was unnecessary, stating, "I don't know why you are doing this. I don't sell drugs." Dep. Tr. 61:6–10. When asked at the deposition if anyone else was around when the strip search occurred, Plaintiff responded, "I seen the Detective Lynch and I seen the sergeant guy." *Id.* 60:17–20. Defendants have put forth three pieces of evidence to rebut this allegation: First, Officer Vignapiano's sworn affidavit denying that a strip search was performed on Plaintiff, Vignapiano Aff. ¶ 9 ("There was no reason for a full strip search . . . . If I thought a strip search was necessary, I would have notified the tour commander, as he is solely responsible for deciding if a strip search is necessary."); second, pages from the "strip-search log" of the Port Authority Bus Terminal, which reflect no entry of Plaintiff being strip searched, Lee Decl. at 1; Memo. at 11–12; and third, Detective Lynch's sworn affidavit stating that apart from attempting to interview Plaintiff, he did not have any further involvement in the arrest and prosecution of Plaintiff, Lynch Aff. ¶¶ 4–5.

While Defendants rightly point out that Plaintiff's testimony is at times "confusing," Memo. at 11, his allegations regarding the alleged strip search—who conducted it, who observed it, which items of clothing were removed, and what he remarked to the officer conducting the

9

alleged search—are neither vague nor inconsistent. Although there are numerous examples of courts in this district granting summary judgment where the non-moving party's sole basis for disputing a material fact was self-serving deposition testimony, the testimony in such cases has been contradictory and lacked specificity. For example, in *Valade v. City of New York*, 949 F. Supp. 2d 519 (S.D.N.Y. 2013), this Court granted summary judgment on an unlawful strip search claim where, at her deposition, the plaintiff "was unable to testify even that she *believed* she was strip searched." *Id.* at 527 (alteration in original). Another court in this district granted summary judgment on a negligence claim where the plaintiff's only evidence of her allegedly improper removal from an airplane was "self-serving, incomplete, and inconsistent" deposition testimony which "d[id] not present controverting facts; it merely consist[ed] of a few general statements that she did not know what was happening" as she was removed from the airplane. *Lozada v. Delta Airlines, Inc.*, No. 13-CV-7388 (JPO), 2014 WL 2738529, at *5 (S.D.N.Y. June 17, 2014). In the present case, by contrast, Plaintiff consistently provided specific facts throughout his deposition testimony that contradict Defendants' version of the events. *See Jean-Laurent v. Hennessy*, No. 05-CV-1155 (JFB) (LB), 2008 WL 3049875, at *14 (E.D.N.Y. Aug. 1, 2008) (summary judgment improper where plaintiff provided detailed testimony that unidentified officers had publicly strip searched him). These competing narratives regarding Plaintiff's search at the precinct constitute a genuine dispute of material fact.

Second, there is a genuine dispute as to which officers participated in the strip search. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (citation omitted). Whether a defendant is personally involved is a question of fact, such that summary judgment cannot be granted on this ground if the personal involvement

of a defendant is in dispute. *See id.* While summary judgment may be appropriate when a plaintiff has failed to identify a "particular defendant as having strip-searched him," *Caceres v. Port Auth. of New York & New Jersey*, No. 06-CV-1558 (JGK), 2008 WL 4386851, \*12 (S.D.N.Y. Sept. 24, 2008, here, Plaintiff has specifically alleged that Officer Vignapiano was the individual who did so. It is true that Plaintiff's Amended Complaint does not name Officer Vignapiano as the individual who strip searched him, but in his deposition Plaintiff identified Vignapiano by name. Dep. Tr. at 59:12–14 ("Q: When you say that you were stripped naked, who did that? . . . A: Vignapiano."). The Court finds this identification "sufficiently specific" to raise a genuine dispute of material fact as to Officer Vignapiano's personal involvement. *Williams v. City of New York, et al.*, No. 05-CV-10230, 2007 WL 2214390 (SAS), at \*12 (S.D.N.Y. July 26, 2007) (plaintiff's testimony that "one of the Officers who attacked him in the street conducted the strip search" was specific enough to survive a summary judgment motion). On the other hand, there is no record evidence of personal involvement by Defendant Lynch and Sergeant Kostanoski in the strip search. The Court thus finds that there is no genuine issue as to their involvement in the reported strip search, and the claims against them are dismissed.

Finally, there is a genuine dispute over whether the alleged strip search was conducted reasonably. "A strip search conducted in a professional manner is more reasonable than one that is not." *Harris v. Miller*, 818 F.3d 49, 59–60 (2d Cir. 2016). Plaintiff consistently stated in his deposition testimony that the arresting officer "[h]andcuffed me to the wall" and "[s]tripped me naked" as Plaintiff was crying. Dep. Tr. 57:5–8. In response, Defendants have declared that no strip search was conducted at all. Lee Decl., Ex. D. The Court of Appeals has explained that "it is difficult, if not impossible, for courts to determine the reasonableness of a visual body cavity search without record evidence supporting the officer's justification for initiating the search."

*Harris*, 818 F.3d at 61. In *Harris*, as in this case, the defendant officials "provided no evidence controverting [the plaintiff's] description of events; instead, they provided in their briefs a blanket denial that the [strip] search ever occurred." *Id.* at 60. With insufficient record evidence, the Court of Appeals remanded to the district court for further factual development. Following this precedent, this Court will not "resort[] to supplying its own hypothetical justification" or basis for reasonable suspicion. *Id.* at 61. Whether Plaintiff's allegations are fabricated is a question for the jury. Given these genuine disputes of material fact, summary judgment is improper.

Defendants argue in the alternative that even if Plaintiff were strip searched in violation of his Fourth Amendment rights, the individual officers involved would be entitled to qualified immunity. To determine whether a defendant is entitled to qualified immunity, a court must determine: "(1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was "objectively reasonable" for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 133–34 (2d Cir. 2010)). "Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder." *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004). Given that there is a genuine dispute of material fact as to whether the strip search occurred at all, and if it did, under what circumstances, this dispute "must be resolved by a jury before the legal question [of qualified immunity] can be addressed." *Bonilla v. United States*, 357 F. App'x 334, 335 (2d Cir. 2009).[5]

_____

[5] In any event, it would be difficult to conclude at this stage that the alleged strip search was objectively reasonable in light of Officer Vignapiano's assertion that "[t]here was no reason for a full strip search." Vignapiano Aff. ¶ 9.

For these reasons, the Court finds that there is a genuine issue of material fact as to whether Officer Vignapiano conducted a strip search of Plaintiff, and if so, whether he is entitled to qualified immunity for so doing. Because Plaintiff has not sufficiently alleged Detective Lynch and Sergeant Kostanoski's personal involvement in the search, the Court grants summary judgment as to those two individuals.

### D.  Claims Against the Port Authority Under 42 U.S.C. § 1983

Lastly, Plaintiff seeks also to hold the Port Authority responsible for the alleged Fourth Amendment violations resulting from the reported strip search. For a plaintiff to prevail on a § 1983 claim against a government entity such as the Port Authority, he must establish that the entity implemented a policy or custom that caused plaintiff's injuries. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Specifically, the plaintiff must point to a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91. "Although the Port Authority, a bi-state agency, is not technically a municipality, courts have treated it as such and have analyzed claims against it under the standards governing municipal liability under Section 1983." *Mack v. Port Authority of New York and New Jersey*, 225 F. Supp. 2d 376, 382 n.7 (S.D.N.Y. 2002). Here, Plaintiff has identified no particular training, practice, or policy that led to his reported strip search. His § 1983 claim against the Port Authority is therefore dismissed.

---

While this is a statement of his subjective intent, and qualified immunity concerns objective reasonableness, *see Amore v. Novarro*, 624 F.3d 522, 530–31 (2d Cir. 2010), Officer Vignapiano's statement nonetheless informs the Court's understanding of the factual circumstances surrounding the alleged strip search.

**CONCLUSION**

For the foregoing reasons, it is hereby ORDERED that Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiff's motion for summary judgment is denied in full. All that remains is Plaintiff's claim that Defendant Vignapiano unconstitutionally strip searched him. For this remaining claim, the parties are directed to schedule a settlement conference before Magistrate Judge Fox, to whom this case was referred for pre-trial purposes. Dkt. 11. If such a conference is unsuccessful, the parties shall submit a joint status letter to the Court no later than one week after the conference is held.

The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 39, 47, 59, and 120, and to send a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated:    October 27, 2020
          New York, New York

                                            _____
                                            Ronnie Abrams
                                            United States District Judge

14